Filed 3/5/25  P. v. Nichols CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TERRY NICHOLS,<br><br>        Defendant and Appellant. | A169813<br><br>(Contra Costa County<br>Super. Ct. No. 02-00330943-2) |

Defendant Terry Nichols appeals after a jury found him guilty of willfully injuring a victim with whom he formerly had a dating relationship (Pen. Code, § 273.5, subd. (a))[1] and the trial court placed him on probation. His appointed appellate counsel has filed a brief raising no issues but seeking our review pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Counsel informed defendant of his right to file a supplemental brief, which he has not done.  Our independent review of the record reveals no arguable issues, and we affirm.

## BACKGROUND

### The Charges

On April 5, 2022, the Contra Costa County District Attorney filed an information charging defendant with willfully injuring a victim with whom

---

[1]        Further undesignated statutory references are to the Penal Code.

1

he formerly had a dating relationship resulting in a traumatic condition (§ 273.5, subd. (a)) (count 1), with an enhancement for personally inflicting great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)); seven counts of possession of a firearm by a person with a prior qualifying misdemeanor conviction (§ 29805) (counts 2 through 8); and possession of ammunition by a prohibited person (§ 30305, subd. (a)(1)) (count 9).

On December 6, 2023, the trial court granted defendant's motion to suppress counts 2 through 9, as well as the great bodily injury enhancement. Those counts and the enhancement were subsequently dismissed. A jury trial proceeded on the sole, remaining count of willfully injuring a victim with whom defendant formerly had a dating relationship.

**The Evidence at Trial**

Jane Doe, the victim in this case, testified she first met defendant in 2003. They were re-acquainted and started dating in 2014. Their relationship started off "great" but after a few months began to "fail[ ]."

Doe testified that defendant committed violent acts against her on multiple occasions. In February 2015, defendant grabbed Doe on her neck, slammed her on his bed, and choked her. Doe did not call the police or go to the hospital. Defendant apologized the next day, and Doe forgave him.

Around January 2016, while defendant and Doe were arguing at his house, defendant pulled out a gun on her and told her to leave. Again, defendant apologized, and they made up.

In January 2018, defendant and Doe were fighting in his truck when he punched her in the face and threw her out of the truck. Doe's mother and daughter took Doe to the hospital, where she was treated for her injuries. Afterwards, defendant and Doe broke up, but he apologized and they got back

together.

In another incident sometime in 2018, defendant again pulled a gun on Doe and told her to "get the fuck out of his house."

Additionally, in June 2018, defendant punched Doe in the nose, causing her to bleed. She did not go to the hospital or call the police.

Doe and defendant had several breakups throughout the years. On March 29, 2019, the date of the incident underlying the charged offense, they were back together. Doe met defendant that evening at Jerry's Bar in Richmond, one of their regular hangouts. While at the bar, Doe's phone went missing. Eventually, defendant told Doe that he had her phone and held onto it from that point on. Defendant then said he wanted to get something to eat at Sports Page in Oakland, and so they left the bar. Doe got into the passenger seat of defendant's car, and defendant drove off.

Instead of driving them to Sports Page, defendant went to his house where he lived with his mother and parked his car. While about to exit the vehicle, Doe asked defendant to give back her phone, which led them to argue. Defendant then hit Doe in the face more than two times. Doe fell on the ground of the driveway of defendant's home, when he hit her multiple times on her body. Doe then saw defendant walk away from the scene, before passing out on the driveway.

When Doe regained consciousness, she recovered her phone from the ground, walked down the block, hid in some bushes for safety, and called 911. She was then taken to the hospital in an ambulance.

Doe was "in a lot of pain" after defendant beat her. She had bruises on her face, hips, arms, legs, and elbow. She also sustained a black eye, which was swollen shut for about two to three days.

A police officer who responded to the 911 call saw Doe had a gash above

3

her right eye, blood and bruising on her lips, scratches on her elbows, and cuts on her hands. He also saw blood spots on the road near the driveway of defendant's home.

Defendant testified on his own behalf. He denied ever hitting, choking, or putting his hands in a violent manner on Doe or any other woman. He also denied that he ever pulled a gun on Doe.

According to defendant, on the evening of March 29, 2019, he met up with Doe at Jerry's Bar. When defendant received a phone call from his mother and answered it, Doe asked who he was on the phone with and walked fast and aggressively towards him. Defendant said he was talking to a "friend"; he did not tell Doe his mother called him. Doe then "caus[ed] a scene", and so defendant decided to leave the bar and go home. Doe then got into the passenger seat of defendant's car and defendant drove off. Doe had been drinking and was very intoxicated at this point.

During the car ride, Doe was loud and "in [defendant's] face, cussing [him] out." Doe was angry, saying defendant "was dirty" and "wrong" for being "on the phone with another bitch." When they arrived at defendant's house and he was about to park his car, Doe opened the car door. Defendant saw "her legs locked up" and heard her hit something before she fell to the ground. He then parked the car and got out. Defendant saw Doe had a gash over her right eye that was swelling up and starting to bleed. She also had a cut on her hand. Defendant told her to go inside the house, where his mother was. Doe did so. Defendant did not call 911 or go inside the house with Doe, though he was concerned for Doe's safety. Instead, he called Angela W., his "[f]riends with benefits," to pick him up.

On behalf of the defense, an emergency room doctor testified that Doe's facial injuries were consistent with multiple closed-fist blows to the face. But

4

it was "equally plausible" that Doe's injuries "could have come from a fall." He also opined that Doe's injuries to her hands and elbows were "more consistent with a fall."

**The Verdict and the Sentence**

On December 21, 2023, the jury found defendant guilty of willfully injuring a victim with whom he formerly had a dating relationship, in violation of section 273.5, subdivision (a).

On December 22, the trial court ordered defendant to three years' probation subject to various terms and conditions, including that he serve 120 days in county jail, stay away and refrain from contacting Jane Doe, and pay restitution and other fines after finding defendant had an ability to pay them.

This appeal followed.

## DISCUSSION

After examining the record, defendant's appointed counsel filed a brief raising no issues on appeal and requesting that we independently review the record pursuant to *Wende*, *supra*, 25 Cal.3d 436. Counsel advised defendant of his right to file a supplemental brief within 30 days of the filing of counsel's brief. The 30-day period has passed and no brief has been received.

We have independently reviewed the record on appeal. Substantial evidence supports defendant's conviction. Although there was conflicting evidence concerning the underlying incident of March 19, 2019 and other incidents of domestic violence involving Jane Doe and defendant, we view the evidence in the light most favorable to the verdict and resolve all conflicts in its favor. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Barnes* (1986) 42 Cal.3d 284, 303–304.) Further, we discern no errors in the jury instructions or the trial court's evidentiary rulings, including the admission

5

of defendant's prior acts of domestic violence.  (See Evid. Code, § 1109, subd. (a).)  Additionally, the order of probation is authorized by law.  In sum, there are no arguable issues warranting further briefing.

## DISPOSITION

The judgment is affirmed.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A169813W)